**TECHNOLOGY PATENTS, LLC, Plaintiff,**

v.

**DEUTSCHE TELEKOM AG, et al., Defendants.**

**Civil Action No. AW–07–3012.**

United States District Court, D. Maryland, Southern Division.

Aug. 29, 2008.

---

Douglas W. Baruch, Elliott E. Polebaum, Fried Frank Harris Shriver and Jacobson LLP, Luna Miriam Samman, Dickstein Shapiro LLP, George F. Pappas, Peter A. Swanson, Richard Rainey, Covington and Burling LLP, Frank J. Eisenhart, Dechert LLP, Brian Matthew Koide, Nathaniel Grow, Richard McMillan, Jr., Crowell and Moring LLP, Carl S. Nadler, Heller Ehrman LLP, Jin Suk Park, Akin Gump Strauss Hauer and Feld LLP, Brian T. Racilla, Linda Liu Kordziel, Michael J. McKeon, Fish and Richardson PC, Michael David Billok, Gibson Dunn and Crutcher LLP, Franklin M. Rubinstein, Wilson Sonsini Goodrich and Rosati, Laura P. Masurovsky, Finnegan Henderson Farabow Garrett and Dunner LLP, Washington, DC, James W. Dabney, Henry Lebowitz, Ron Lazebnik, Fried Frank Harris Shriver and Jacobson LLP, Michael O. Cummings, Covington and Burling LLP, John L. Labarre, Josh Knevitt, Gibson Dunn and Crutcher LLP, New York, NY, Bruce L. Marcus, Joseph Anthony Compofelice, Jr., Marcus Bonsib LLC, Greenbelt, MD, Bryant C. Boren, Jr., Christopher W. Kennerly, Kevin E. Cadwell, Steven Schortgen, Baker Botts LLP, Dallas, TX, Gregory D. Grant, Shulman Rogers Gandal Pordy and Ecker PA, Rockville, MD, Jonathan D. Baker, Nathaniel William Peters, Dechert LLP, Mountain View, CA, Michael M. Markman, Robert J. Williams, Heller Ehrman LLP, San Francisco, CA, Stephen R. Mick, Akin Gump Strauss Hauer and Feld, Los Angeles, CA, Steven M. Zager, Akin Gump Strauss Haer and Feld LLP, Houston, TX, Michael Anthony Ladra, Robin L. Brewer, Stefani Elise Shanberg, Wilson Sonsini Goodrich and Rosati PC, Palo Alto, CA, for Defendants.

## MEMORANDUM OPINION

ALEXANDER WILLIAMS, JR., District Judge.

Plaintiff Technology Patents, LLC, ("Plaintiff") has filed this action against 131 U.S. and international telecommunications companies, alleging patent infringement under Title 35 of the U.S.Code.[1] Currently pending and ready for resolution in this patent infringement case are numerous Defendants' Motions to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(6). Nearly every Defendant in this case has filed a motion to dismiss under Rule 12(b)(2) or 12(b)(6) or both.[2] The issues have been fully briefed, and the filings thus far have been quite extensive. The Court has reviewed the entire record, as well as the Pleadings and Exhibits, with respect to the instant motions. On August 15, 2008, the Court gathered as many of the foreign Defendants and conducted a hearing on the Motions to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction.[3] *See* Local Rule 105.6 (D.Md.2008). For the reasons stated more fully below,

---

1. Hereinafter, the U.S. companies will be referred to as the "U.S. telecoms" and the international companies will be referred to as the "foreign Defendants."

2. Defendant Orange S.A. has filed the only Motion for Summary Judgment. (Docket No. 522).

3. The law firm of Mayer Brown, who represents the Vodafone Defendants, argued on behalf of their clients and the rest of the foreign Defendants, to the extent that their arguments were raised by the other foreign Defendants. There were several foreign Defendants whose counsel also argued on their individual clients' behalf to address arguments raised in their briefs that were unique to their clients.

the Court will GRANT the foreign Defendants' Motions to Dismiss under Fed. R.Civ.P. 12(b)(2), and GRANT–IN–PART and DENY–IN–PART Defendants' Motions to Dismiss under Fed.R.Civ.P. 12(b)(6).

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff Technology Patents, LLC brought suit against 131 Defendants representing nearly thirty-five countries claiming infringement of two patents, United States Reissued Patent No. RE39,870 (the "'870 patent") and United States Patent No. 6,646,542 (the "'542 patent"), collectively the "patents-in-suit." The defendants are domestic and international wireless telecommunications service providers, wireless device manufacturers, and wireless technology software producers. The patents-in-suit relate to a global paging system for sending international text messages. (*See* Docket No. 1, Ex. 1, '870 Patent, at col.1, ll.15–19—"this invention relates to a global paging system utilizing a land-based packet-switching digital data network (e.g. the Internet) and a feature for permitting subscribers to remotely designate countries in which they are, or expect to be, located."); *see also* Docket No. 1, Ex. 2, '542 Patent, at col.1, ll.5–10 (same). More specifically, the patents-in-suit protect systems and methods for international paging in which an originating user sends a paging signal to a website or a server of a paging system. The user then designates a country in which the receiving user is to be paged, after which the first website or server transmits the message over the Internet to a second website or server located in the designated country. The second server causes a wireless transmitter located in the designated country to attempt to page the wireless device of the receiving user. Under some embodiments of the patents, if the receiving user is not in the designated country, the server will continue to attempt to page the receiving user according to a designated list of alternative countries. The goal of the paging methods and systems is "to transmit paging data around the world so that subscribers to the system or receiving users may be paged in different countries around the world, regardless of whether the caller or originating user knows the exact whereabouts of the receiving user." ('870 Patent, col.3, ll.42–48).

According to the foreign Defendants, there are two methods of sending international text messages: the U.S. phone number scenario and the "roaming" scenario. Under the U.S. phone number scenario, a message is sent from the foreign country to a person in the U.S. with a U.S. phone number. To accomplish this exchange, the foreign Defendants "hand-off" the message to an international "gateway" service, *i.e.* Sybase 365, Syniverse, etc. The "gateway" then sends the message to a U.S. telecom, which then sends the message to the recipient in the U.S. The foreign Defendants all maintain that they have no insight or control over the "gateway" system or even knowledge that the messages are actually received by the intended recipient because the routing path for the messages is under the control of the international gateway provider.

Under the "roaming" scenario, an international subscriber may be "roaming" in the U.S. but still desires to send and receive text messages. To accomplish this exchange, the foreign Defendants "hand-off" messages intended for the roaming international subscriber to the international CCSS7[4] network, which is then routed to a mobile switching center ("MSC"), owned by a U.S. telecom. The foreign Defendants emphasize that they do not

4. "CCSS7" stands for "common channel system signaling."

own the CCSS7 network and have no control over the routing of messages to the designated MSC. When the MSC receives a message intended for the roaming subscriber, the MSC transmits that message to the subscriber.

Plaintiff has brought suit alleging that all the Defendants are liable for infringing the patents-in-suit, in violation of 35 U.S.C. § 271.[5] (*See* Docket No. 1). Plaintiff alleges that Defendants have infringed the patents with (1) their websites for sending and/or receiving international text or SMS messages, (2) live computer-based messenger programs, such as Windows Live Messenger and Yahoo! Messenger, adapted to send and/or receive international text or SMS messages,[6] (3) handheld mobile devices adapted and sold to use any of the messaging websites or messaging programs, and (4) systems, methods, and/or services for international messaging provided by the Defendants who are wireless carriers. (*Id.* ¶¶ 149, 163). Numerous Defendants have moved to dismiss Plaintiff's complaint on the basis of lack of personal jurisdiction and failure to state a claim because the extraterritorial nature of the patent claims precludes a finding of infringement under U.S. patent laws.

## STANDARD OF REVIEW

■ Under Fed.R.Civ.P. 12(b)(2), the party asserting personal jurisdiction has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir.1993). When a court addresses the question of jurisdiction based only on the pleadings, the allegations in the complaint, the motion papers, and any supporting legal memoranda, without an evidentiary hearing, the

burden is on the plaintiff to make a *prima facie* showing of a sufficient basis for jurisdiction. *Id.*; *see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir.2005). In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan*, 2 F.3d at 60; *see also Dring v. Sullivan*, 423 F.Supp.2d 540, 543 (D.Md. 2006). Since this Court has not conducted any evidentiary hearing, Plaintiff has the burden to only establish a *prima facie* case for jurisdiction.

■ The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, — U.S. ——, 127 S.Ct. 1955, 1965 n. 3, 167 L.Ed.2d 929 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe all factual allegations in the

---

**5.** In the Complaint, Plaintiff alleges violations of all subparts of 35 U.S.C. § 271, but only alleges specific violations under §§ (a), (b), (c), and (f) in the Complaint and in its Opposi-

tions. (*See* Docket No. 1 ¶¶ 145, 146, 147, 159, 160, 161; Docket No. 360).

**6.** "SMS" stands for "short message service."

light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979). In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (internal citations omitted).

## DISCUSSION

### *Motion to Dismiss pursuant to Fed. R. 12(b)(2) for Lack of Personal Jurisdiction*

#### I.

The foreign Defendants argue that jurisdiction in this district is improper because there are insufficient contacts with the state of Maryland to establish personal jurisdiction under the Maryland long-arm statute or due process because none of them transact business or have the ability to sell products and provide services beyond the borders of their home counties. They argue that the U.S. telecoms are the entities actually responsible for sending messages to persons in Maryland and within the entire U.S. They also contend that even if there were sufficient contacts in Maryland, jurisdiction would be improp-

er because having Defendants defend themselves in this district would neither be fair nor reasonable.[7]

Plaintiff, however, argues that the foreign Defendants are subject to the jurisdiction of this Court because of their contacts with the state of Maryland. Specifically, Plaintiff argues that the foreign Defendants have entered into agreements with U.S. telecoms for the purpose of enabling allegedly infringing international text messages to and from the U.S., including Maryland; provided its subscribers with mobile devices to use for such text messaging in the U.S., including Maryland; and encouraged its subscribers to use international text messaging to and from the U.S., including Maryland, thereby deriving substantial revenue from their infringing activities. (*See* Compl. ¶ 137). Alternatively, Plaintiff argues that the foreign Defendants are subject to personal jurisdiction under Fed.R.Civ.P. 4(k)(2), based on their aggregate contacts with the United States as a whole. The Court will address each of these bases for jurisdiction separately.

#### II.

■ A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See* Fed. R.Civ.P. 4(k)(1); *see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir.2002). However, personal jurisdiction involving patent infringement cases is governed by the law of the Federal Circuit, rather than that of the regional Circuit in which the action originated. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed.Cir.2001); *see also*

---

7. Almost all of the foreign Defendants have moved to dismiss the complaint for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). For the purposes of this opinion, all of the arguments asserted by the foreign De-

fendants will be considered collectively since nearly all of the foreign Defendants are similarly situated and have raised the same grounds for dismissal under Rule 12(b)(2).

*Kernius v. Int'l Elecs. Inc.*, 433 F.Supp.2d 621, 622 (D.Md.2006). In order for a court to exercise personal jurisdiction over an out-of-state (or foreign or international) defendant, two conditions must be satisfied: (1) the exercise of personal jurisdiction must be authorized under the state's long-arm statute, and (2) the exercise of personal jurisdiction must comport with the due process requirements of the U.S. Constitution. *Inamed Corp.*, 249 F.3d at 1359.

Regarding the first element, Maryland courts have interpreted Maryland's long-arm statute as coterminous with the limits of the Due Process Clause of the Fourteenth Amendment. *ALS Scan*, 293 F.3d at 710; *see also Kernius*, 433 F.Supp.2d at 622. Nevertheless, courts in Maryland are still instructed that it is not "permissible to simply dispense with analysis under the long-arm statute," in assessing whether a court in Maryland has personal jurisdiction over a defendant. *Dring*, 423 F.Supp.2d at 545 (citing *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141, 892 A.2d 479, 493, n. 6 (2006)). It is appropriate, then, to begin with the Maryland long-arm statute.

Maryland's long-arm statute provides, in relevant part:

(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md.Code Ann., Cts. & Jud. Proc. § 6–103(b).

 Plaintiff argues that jurisdiction is established under subsections (1), (2), and (4) of Maryland's long-arm statute. In deciding whether the requirements of subsection (b)(1) are met, the Court must determine whether the foreign Defendants' actions culminate in "purposeful activity" within the state of Maryland. *Prince v. Illien Adoptions Int'l, Ltd.*, 806 F.Supp. 1225, 1229 (D.Md.1992); *see also Sleph v. Radtke*, 76 Md.App. 418, 427, 545 A.2d 111, 115 (1988). The Court notes that a nonresident who has never entered the stated may be deemed to have "transacted business" within Maryland under the meaning of subsection (b)(1) if its actions constitute "purposeful activity" within Maryland. *Prince*, 806 F.Supp. at 1228.[8]

---

8. In interpreting the meaning of a state's long-arm statute, the Federal Circuit defers to the state and federal courts of the forum state. *See Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed.Cir. 1998) ("[I]n interpreting the meaning of state long-arm statutes, we elect to defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process.").

Under subsection (b)(1), Plaintiff argues that the foreign Defendants "transact business" in Maryland because their networks are used to send and receive international text messages to and from Maryland, as well as through their agreements with U.S. telecoms. The foreign Defendants, on the other hand, argue that jurisdiction is improper under subsection (b)(1) because none of them transact business in Maryland and cannot provide wireless services outside their home country. Moreover, the foreign Defendants maintain that they do not target Maryland residents, as their products, services, and websites[9] are directed only to residents in their home countries, and not Maryland.

Even though there is no evidence that the foreign Defendants have entered Maryland, it cannot be said that their actions have constituted "purposeful activity" in Maryland to be considered "transacting business." The fact that the foreign Defendants cannot provide any wireless services in Maryland or sell their products to Maryland residents, which is essential in constituting "purposeful activity," weighs strongly against finding that they transact business in Maryland. *See Prince*, 806 F.Supp. at 1229; *see also Layton v. AAMCO Transmissions, Inc.*, 717 F.Supp. 368, 370 (D.Md.1989) (the express statutory language of subsection (b)(1) "require[s] the performance of acts *within* the state" and therefore, cannot confer jurisdiction based on acts outside Maryland, even if the "effects" of those acts are felt within Maryland) (emphasis added).

It appears to the Court that the actual transmission of the text messages does not result from the "purposeful activity" of the foreign Defendants, but rather the deliberate intention of the foreign Defendants' subscribers in his or her desire to send a text message to someone in Maryland.[10] Because Plaintiff has not directed the Court to any purposeful act that the foreign Defendants have engaged in within the state of Maryland, jurisdiction under subsection (b)(1) cannot lie over the foreign Defendants. *See Talegen Corp. v. Signet Leasing & Fin. Corp.*, 104 Md.App. 663, 657 A.2d 406, 409, and n. 3 (Md.1995) (reiterating that a plaintiff must show "some *purposeful act* in Maryland in relation to one or more of the elements of plaintiff's cause of action") (emphasis added).

Under subsection (b)(2), Plaintiff argues that the foreign Defendants' agreements with U.S. telecoms provide jurisdiction in Maryland because it enables their subscribers to send infringing text messages to Maryland using their mobile devices. Plaintiff maintains that these agreements also allow Maryland subscribers of U.S. telecoms to send infringing text messages internationally through the use of the foreign Defendants' networks.

Courts in Maryland have interpreted subsection (b)(2) as relating only to contract actions, and, as it appears to the Court, this subsection is inapplicable to this case. *McLaughlin v. Copeland*, 435 F.Supp. 513, 529 (D.Md.1977) (stating that "[s]ubsection (b)(2), by its terms, relates only to contract actions"). This action, although it may be tangentially related to an agreement between the parties, is nonetheless an infringement suit, which is out-

---

**9.** At the hearing, counsel for the foreign Defendants noted that many of the websites for the foreign Defendants are not even in English. Additionally, while most of the foreign Defendants' websites do mention Maryland towns and show geographic areas where services would be provided, this information is appears to be for the subscribers in the foreign countries to inform them of where they may be able to use their mobile devices if they so desire.

**10.** This is also true under the "roaming" scenario, when a foreign subscriber decides to travel to Maryland receive messages while in the state.

side the purview of subsection (b)(2). *United Merchs. & Mfrs., Inc. v. David & Dash, Inc.*, 439 F.Supp. 1078, 1082–83 (D.Md.1977) (holding that a suit for infringement of federal copyright and unfair competition, which the court acknowledged was essentially a "tort action," was "outside the scope of [subsection] (b)(2)," even though it "related to a contract"). Therefore, jurisdiction under subsection (b)(2) cannot be used to exercise jurisdiction over the foreign Defendants.

Finally, under subsection (b)(4), Plaintiff alleges that the use of the infringing system in Maryland is a "tortious injury" from which the foreign Defendants derive substantial revenue. The Court notes that there is some dispute as to whether subsection (b)(4) is even applicable here.[11] Even if this section is applicable, Plaintiff cannot show that the foreign Defendants regularly solicit business or engage "in any persistent course of conduct in Maryland." *See Bass*, 787 F.Supp. at 535. Plaintiff has alleged that the foreign Defendants make thousands of infringing text messaging sales in Maryland and cause the patented system to be used in Maryland, resulting in substantial revenue to the foreign Defendants. While there is probably some provision in these agreements relating to payment and costs, and the Court cannot be sure without the benefit of reviewing those agreements, most of the foreign Defendants have submitted affidavits which show that the revenue from text messages to and from Maryland are only fractions of a percent.[12] As such, jurisdiction over the foreign Defendants would not be proper under subsection (b)(4).

Because there is no section under Maryland's long-arm statute applicable for jurisdiction under these facts, jurisdiction in this Court cannot be exercised over the foreign Defendants.

## III.

Since the Court has found no provision under the under the Maryland long-arm statute by which the Court could exercise jurisdiction over the foreign Defendants, the jurisdictional inquiry could end here. However, if for some reason there were a basis to establish jurisdiction under the Maryland long-arm statute, the exercise of personal jurisdiction must comport with the due process requirements of the Fourteenth Amendment.[13] *Inamed Corp.*, 249

11. Subsection (b)(4) has been construed by the Maryland courts as a general jurisdiction statute, and Plaintiff in this case has stated that jurisdiction over the foreign Defendants arises under the *specific* jurisdiction of this Court. *See Zawatsky v. John Alden Life Ins. Co.*, 822 F.Supp. 1215, 1216, n. 3 (D.Md. 1993); *see also Bass v. Energy Transp. Corp.*, 787 F.Supp. 530, 534–35 (D.Md.1992) (contacts with Maryland "must be sufficiently extensive, continuous, and systematic in order to satisfy Maryland's [subsection] (b)(4) statutory requirements of 'overall fairness' ").

12. Several foreign Defendants have submitted affidavits stating that their revenues derived from text messaging activities in Maryland are insignificant. For example, Defendant Rogers Wireless Partnership derived 0.004% of its total 2007 revenue from international text messaging involving Maryland; Defendant Tele–Mobile (aka TELUS Communica-

tions Company) derives 0.01% of its total annual revenue from the roaming charges in Maryland, where text messages "constitute far less than one percent of total annual revenue;" Defendant Bermuda Digital stated that roaming charges from Maryland would be a tiny fraction of the 5% of total revenue that it obtains from international roaming worldwide; and Defendant Swisscom estimated that it derives 0.00012% of its total revenue in text messaging activities involving Maryland in 2007.

13. Because patent law is a federal question, Fifth Amendment due process rights, rather than Fourteenth Amendment due process rights, which apply to state law matters, are actually at issue here. The analysis, however, under the Fifth Amendment is the same for the Fourteenth Amendment. "Although it was developed in the context of the due process clause of the Fourteenth Amendment, we

F.3d at 1359. A court may, consistent with due process, "exercise personal jurisdiction over a nonresident defendant so long as there exist 'minimum contacts' between the defendant and the forum State." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). A defendant's contacts with the forum State "must be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice,'" *World–Wide Volkswagen,* 444 U.S. at 291, 100 S.Ct. 559 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Furthermore, jurisdiction over a defendant cannot be based solely as a result of "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or a third person." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174.

Minimum contacts are satisfied under one of two theories: general jurisdiction or specific jurisdiction. General jurisdiction arises where the defendants maintains "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In contrast, specific jurisdiction arises where a defendant purposefully directed his activities at the residents of the forum state and the cause of action arises out of those activities. *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174. Plaintiff here

has stated that only *specific* jurisdiction is at issue, so there will be no discussion of general jurisdiction.

The Federal Circuit has established a three-prong test for determining whether the exercise of specific jurisdiction is consistent with due process: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the claim arises out of or relates to the defendant's activities within the forum state; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Inamed Corp.,* 249 F.3d at 1361. The first two factors correspond with the "minimum contacts" prong, while the third factor corresponds with the "fair play and substantial justice" prong. *Id.* If the plaintiff meets the burden of establishing minimum contacts, then the burden shifts to defendant to prove that the exercise of jurisdiction in Maryland is unreasonable. *Id.*

■ Here, Plaintiff has asserted several grounds for specific personal jurisdiction in Maryland. Plaintiff alleges that the foreign Defendants have purposefully availed themselves of the privilege of conducting business in Maryland by (1) making systems, processes, and enabling their services to be used in the U.S. and causing international text messages to be sent to and from Maryland (Compl. at ¶ 136); (2) entering into agreements with numerous U.S. telecoms for the purpose of enabling and encouraging its subscribers to engage in the allegedly infringing text messaging activities with Maryland, thereby deriving substantial revenue (*Id.* at ¶ 137); (3) encouraging and advertising to their subscribers, through their website, to perform infringing text messaging activities using their mobile devices in Maryland and expressly telling their subscribers that their

apply the standard articulated in *International Shoe Co. v. Washington* ... and its progeny to Fifth Amendment due process cases arising

under federal patent laws." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,* 297 F.3d 1343, 1350 (Fed.Cir.2002).

mobile devices will work in Maryland (*Id.* at ¶ 136); and (4) introducing infringing systems into the stream of commerce that have been used in Maryland (*Id.* at ¶ 139). For the reasons stated below, the Court cannot find that the foreign Defendants have purposefully directed their activities at residents of Maryland.

### A.

Plaintiff first argues that the foreign Defendants are subject to specific jurisdiction because they cause text messages to be sent to the U.S. and Maryland; however, this position is unpersuasive. The foreign Defendants have repeatedly stated and have explained the process of how text messages are actually sent. The foreign Defendants cannot actually send messages directly to residents of Maryland or anywhere in the U.S. As stated before, the foreign Defendants' agreements with U.S. telecoms allow its subscribers to send messages through their networks, if they choose to send international text messages or if they happen to be roaming in the U.S. Because of these limitations in providing wireless services outside of their home countries, the foreign Defendants have entered these agreements to allow their subscribers to avail themselves of the U.S. forum via the U.S. telecoms, who are actually responsible for delivering the messages.

### B.

Similarly, the roaming agreements that the foreign Defendants have entered into with the U.S. telecoms cannot support jurisdiction either. Defendants stated at the hearing that one of the primary reasons for entering into these "roaming" agreements with the U.S. telecoms is precisely because the foreign Defendants cannot transact business in the U.S. or send messages, or provide wireless services within the U.S. In a case similar to the case at bar, a court in this Circuit held that a telecommunications company that entered into "roaming" agreements with providers of nation-wide roaming services did not purposefully direct its activities into the forum state. In *Thomas v. Centennial Comm. Corp.*, No. 05–0495, 2006 U.S. Dist. LEXIS 92555, *10 (W.D.N.C. Dec. 19, 2006), the court declined to exercise personal jurisdiction in North Carolina over a Delaware defendant by virtue of the "roaming" agreements it had entered into with other telecommunications companies that performed nationwide services in North Carolina. The court there rejected the same arguments that Plaintiff here is asserting, namely, that defendant purposefully directed its activities to North Carolina through the "roaming agreements" with other wireless carriers that provided nationwide service.

This Court finds the reasoning in *Thomas* to be persuasive, and likewise, rejects Plaintiff's arguments basing personal jurisdiction on the roaming agreements. None of the roaming agreements are specifically directed towards Maryland, or Maryland residents, but rather cover various geographic regions across the U.S. where the U.S. telecoms have coverage. This cannot be deemed sufficient to exercise personal jurisdiction.

Moreover, as the Federal Circuit has held previously, personal jurisdiction cannot be based on the fact that a defendant contracts or does business with a company that has sufficient contacts with the forum state. In *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, the Federal Circuit refused to exercise jurisdiction over a foreign defendant in Minnesota based on the contacts of its licensees, who did in fact have extensive contacts with Minnesota. 148 F.3d 1355, 1361 (Fed.Cir. 1998). The court stated that simply "doing business with a company that does business in [the forum state] is not the

same as doing business in [the forum state]." *Id.* Similarly, the Court cannot exercise jurisdiction over the foreign Defendants simply based on their agreements with the U.S. telecoms, who do in fact have sufficient contacts in Maryland. Otherwise, a party would be "subject to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide," *Red Wing,* 148 F.3d at 1361, and the Court is unwilling to extend its reach that far, agreeing with other courts that have found similar circumstances insufficient to confer jurisdiction. *See Int'l Telecom, Inc. v. Generadora Electrica del Oriente, S.A.,* No. 00–8695, 2002 WL 465291, at *5 (S.D.N.Y. March 27, 2002) (revenue generated from international telephone calls placed between the United States and Guatemala under a bilateral agreement with U.S. telecommunications carriers, that either originated or terminated in Guatemala, is insufficient to confer jurisdiction over the Guatemalan defendant) (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.,* 197 F.3d 694, 717 (5th Cir.1999)).[14]

### C.

Plaintiff next alleges that specific jurisdiction exists over the foreign Defendants because they advertise that their services can be used in the U.S., including Maryland. While the foreign Defendants provide coverage maps to its subscribers through their websites, this cannot be construed as evidence of the foreign Defendants' intent to provide services directed towards the forum. As stated above, these maps, and any other such advertising that is done by the foreign Defendants, are directed to the foreign Defendants' subscribers and potential customers, the vast majority of whom are located in their home country, and are directed to those subscribers who presumably desire to travel to the U.S. other than for the purposes of sending or receiving international text messages. Simply displaying information on a website that shows where one may use his or her mobile device if he so desires, is not enough to show purposeful activity or and cannot be construed as purposefully directing activity toward the forum state. *See ALS Scan,* (basing "specific jurisdiction in the Internet context only on an out-of-state person's internet activity directed at Maryland and causing injury that gives rise to a potential claim cognizable in Maryland").

### D.

Plaintiff's final argument for specific jurisdiction is that the foreign Defendants have introduced their products into the stream of commerce, intending that they be used in the U.S., including Maryland. The Court notes that in order for the "stream of commerce" theory to apply, there must be an actual *product* placed into the stream of commerce. According to Plaintiff, the foreign Defendants' products are the mobile devices, the actual text messages,[15] and their networks.

Plaintiff primarily relies on the case of *Beverly Hills Fan Co. v. Royal Sovereign*

---

**14.** Plaintiff also has alleged jurisdiction based on several of the foreign Defendants' agreements with regional carriers, such as Dobson, also known as Cellular One, and SunCom. Plaintiff contends that both Dobson and SunCom are regional carriers, not nationwide carriers, that service a particular region, including Maryland. The fact that these are regional carriers instead of nationwide carriers does not change the analysis. The *Red*

*Wing* analysis still applies: a company "doing business with a company that does business in [the forum state] is not the same as doing business in [the forum state]." *Red Wing,* 148 F.3d at 1361.

**15.** There is some dispute about whether text messages can be considered "products," as counsel for the foreign Defendants repeatedly characterized them as "electrons."

*Corp.*, 21 F.3d 1558 (Fed.Cir.1994). There, the court exercised jurisdiction in Virginia over a Chinese defendant that manufactured infringing fans in Taiwan, which were subsequently imported into the U.S. by a third-party, and eventually made their way to a customer in Virginia. *Beverly Hills*, 21 F.3d at 1566. Although the defendants did not sell or ship the fans directly into Virginia, nor were they licensed to do business or had any employees there, the court found that jurisdiction was present in Virginia because the defendants, acting in consort, had established a distribution channel and placed the accused fan in the stream of commerce and knew the likely destination of their products. *Id.*

Upon further inspection of Plaintiff's argument, it is questionable whether the stream of commerce analysis even applies. Generally, in stream of commerce cases, there is an actual, *physical* product that is placed into the stream of commerce, which is evidenced even by the cases upon which Plaintiff relies. *See, e.g., Beverly Hills*, 21 F.3d at 1560 (jurisdiction based under the stream of commerce on the sale of ceiling fans in the forum state); *Kernius*, 433 F.Supp.2d at 622 (call-waiting devices); *Fallon Luminous Prods. Corp. v. Multi*

*Media Elecs., Inc.*, 343 F.Supp.2d 502 (D.S.C.2004) (neon sign); *LG Elecs., Inc. v. Asustek Computers*, 126 F.Supp.2d 414 (E.D. Va.2000) (computer motherboards); *James v. Victor Co. of Japan*, No. AW–98–862, 1998 WL 830556 (D.Md. July 29, 1998) (caller ID device); *Sonoco Prods. Co. v. Inteplast Corp.*, 867 F.Supp. 352 (D.S.C. 1994) (grocery bags). All of these cases cited by Plaintiff to support its stream of commerce argument relate to actual, physical products.

Here, Plaintiff's infringement claims are directed to entire systems and methods for paging and sending messages over networks, between different countries, and not mobile devices, text messages, or foreign-based network facilities or equipment. It is difficult for the Court to imagine how the foreign Defendants' alleged products are actually placed in the stream of commerce, when they are neither bought or sold in Maryland or the U.S.

Moreover, it is doubtful whether text messages themselves can be considered products in the stream of commerce. In *ALS Scan*, the Fourth Circuit held that a person who transmits electronic signals through the internet does not subject himself to jurisdiction in each state where the electronic signal is transmitted and received. 293 F.3d at 714.[16] These text

---

**16.** Although Fourth Circuit law is not controlling in this case, it is relevant and persuasive. In *Commissariat à L'Energie Atomique v. Chi Mei Optoelectronics*, 395 F.3d 1315 (Fed.Cir. 2005), the Federal Circuit looked to Delaware law to glean any clarity under the "stream of commerce" theory, since the Federal Circuit has not resolved for itself the due process requirements of the stream of commerce theory, and noted the competing positions of Justice O'Connor and Justice Brennan in their opinions in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). 395 F.3d at 1320–22. In Maryland, the state courts appear to have adopted the Fourth Circuit's interpretation of the stream of commerce approach. *See Hollingsworth & Vose Co. v. Connor*, 136 Md.App.

91, 112, 764 A.2d 318, 330 (2000) in accord with *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir.1994). The Fourth Circuit explained that the contacts have to be "meaningful," "requiring purposeful activity on the part of the defendants to establish a meaningful contact with the forum state." *Lesnick*, 35 F.3d at 944. The Fourth Circuit appears to adopt a "narrow" version of the stream of commerce theory. The Maryland court in *Hollingsworth* described *Lesnick* as the "ray that broke through the clouds of logical inconsistency" of stream of commerce analysis, *Connor*, 136 Md.App. at 112, 764 A.2d at 330, which seems to suggest that Maryland would also favor a narrow reading of the stream of commerce theory like the Fourth Circuit. If

messages, or electronic signals as they can be characterized, would not support jurisdiction in Maryland simply by being transmitted and received in the state. *Id.* At any rate, these text messages are not sent by the foreign Defendants themselves into the U.S., but rather by their subscribers. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (jurisdiction cannot be based on the "unilateral activity of another party or third person").

The only physical product that could conceivably enter the stream of commerce is the mobile devices themselves. However, as stated earlier, the foreign Defendants cannot and do not sell their products in the U.S., or to Maryland residents. Counsel for the foreign Defendants stated that these mobile devices would not function in the U.S., and the cost of using them in this country would be enormous. If, however, these mobile devices do enter into Maryland, then it would be the result of the foreign subscriber, and not the foreign Defendants, bringing them into this country. As such, Plaintiff's stream of commerce argument fails as well.

### IV.

■ Finally, because due process does not permit this Court to exercise personal jurisdiction over the foreign Defendants, this Court need not engage in the discussion of the reasonableness prong. Nevertheless, it is clear to the Court that haling nearly 120 foreign Defendants in this Court for actions of its subscribers who happen to send messages or travel to Maryland is simply unreasonable. An exercise of personal jurisdiction over these foreign Defendants, under the circumstances presented here, would have such a chilling effect. If Plaintiff had its way, nearly every telecommunications company who

this Court were to borrow persuasive authority from Maryland and the Fourth Circuit and apply it to this case, jurisdiction under the

provided any type of wireless telephonic or messaging services, and had the ability to make phone calls or send messages outside of their home country, would be subjected to the jurisdiction of the United States, and even perhaps Maryland. However ubiquitous this activity may be, there are indeed limits, and this Court is unwilling to expand the reaches of due process to cover the foreign Defendants. As the Fourth Circuit has explained, "courts have recognized that the standards used to determine the proper exercise of personal jurisdiction may evolve as technological progress occurs, [and] it nonetheless has remained clear that technology cannot eviscerate the constitutional limit on a State's power to exercise jurisdiction over a defendant." *ALS Scan,* 293 F.3d at 711.

This Court agrees and finds that because Plaintiff has failed to offer facts that, when viewed in the light most favorable to Plaintiff, demonstrate that the foreign Defendants have purposefully directed its activities at Maryland or its residents and declines to exercise jurisdiction over the foreign Defendants here in Maryland. Extending jurisdiction over the foreign Defendants, in the Court's view, would run afoul the limitations of the due process clause.

### *Jurisdiction under Fed.R.Civ.P. 4(k)(2)*

■ Plaintiff, in the alternative, argues that if the Court does find specific personal jurisdiction lacking under Fed.R.Civ.P. 4(k)(1), then the foreign Defendants are subject to personal jurisdiction under Fed. R.Civ.P. 4(k)(2). Rule 4(k)(2) acts as a "federal long-arm" statute and closes the loophole that was inherent in personal jurisdiction jurisprudence. Before the rule, foreign defendants who lacked single-state contacts sufficient to bring them within the reach of a given state's long-arm statute

stream of commerce theory would most likely be foreclosed.

but who had enough contacts with the U.S. as a whole to make personal jurisdiction over them in a U.S. court constitutional could evade responsibility for civil violations of federal laws that did not provide specifically for service of process. *See generally, United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 40 (1st Cir. 1999).

In order to obtain personal jurisdiction under Rule 4(k)(2), three requirements must be met: (1) the suit must arise under federal law; (2) the defendant must not be subject to personal jurisdiction in any state; and (3) the defendant must have contacts with the U.S. "consistent with the Constitution and laws of the United States." Fed.R.Civ.P. 4(k)(2); *see also Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir.2005).[17]

Here, the first prong is clearly met because this is a patent case, which arises under federal law. The second prong is also met.[18] Plaintiff concedes that if defendant is not subject to specific personal jurisdiction in Maryland, then it would not be subject to such personal jurisdiction in any of the other states. This is because the foreign Defendants' contacts with Maryland are the same as its contact with the

other states. Also, Plaintiff states that there is no evidence which suggests that Defendants have more contacts with any other state as compared to Maryland.

■ The final prong presents the more difficult issue—whether defendants have contacts with the U.S. as a whole that are consistent with the Constitution, i.e. due process. Plaintiff is correct in contending that the contacts with the U.S. are magnified in comparison to Maryland, which it argues would support a finding of jurisdiction under Rule 4(k)(2). However, the Court must be consistent in its approach to the jurisdictional limits of due process in the state of Maryland as well as the U.S. as a whole. As stated above, the foreign Defendants do not and cannot provide services within the U.S.; they have agreements with U.S. telecoms so that its subscribers can avail themselves of sending and receiving messages to and from the U.S. Contacts with the U.S. are essentially the same as those for the state of Maryland, except on a larger scale, and since the same due process limitations do not permit jurisdiction in Maryland, it follows that jurisdiction is not proper for the U.S. as a whole. Therefore, jurisdiction under Rule 4(k)(2) will be denied.[19, 20]

---

**17.** A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to consent to personal jurisdiction there, since personal jurisdiction, unlike federal subject-matter jurisdiction, is waivable. If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2). *See ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir.2001).

**18.** None of the foreign Defendants have not asserted any other state that could exercise personal jurisdiction over them except for Defendant Buoygues Telecom. They informed the Court, at the hearing and as well in their reply brief, that they are registered to do business and maintain an office in California,

which would subject them to personal jurisdiction there. As such, the second prong of the test is not met for Buoygues Telecom, and thus jurisdiction cannot be maintained over them under Rule 4(k)(2). To the Court's knowledge, this is the only Defendant that would be subject to personal jurisdiction in another state.

**19.** Plaintiff has also made a request for limited discovery on facts relating to personal jurisdiction. However, in considering the above discussion, the Court does not find that jurisdictional discovery is warranted here and will deny Plaintiff's discovery request. *See Chi Mei*, 395 F.3d at 1324; *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 403 (4th Cir.2003) (courts have discretion whether to grant any discovery requests).

*Motion to Dismiss for Failure to State a Claim, Fed. R. Civ. P. 12(b)(6)*

 Plaintiff alleges infringement of all 47 claims of the patents-in-suit. The patents are comprised of 14 method claims and 33 system claims. A method claim "consists of a series of acts or steps." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed.Cir.2005). By contrast, in a system, "the components are used collectively, not individually." *Id.* at 1318. As the analytical frameworks differ for assessing the infringement of method and systems claims, the two types of claims will be addressed separately. *See id.* at 1316.

**A. Direct Infringement, 35 U.S.C. § 271(a)**

Section 271(a) provides, "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

**1. Method Claims**

The United States Court of Appeals for the Federal Circuit has held that "a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country." *NTP*, 418 F.3d at 1318. The

parties do not dispute that method claims 1–5 of the '542 patent require steps in a "first country" and a "second country" different from the first country. (*See* Paper 1, Ex. 2, at col.9 ll.58–60). The parties also agree that method claims 1–3 of the '870 patent require steps in a "first country" and a "secondary country" different from the first country. (Paper 1, Ex. 1, at col.9 ll.42–44). Accordingly, Plaintiff's allegations of infringement for claims 1–5 of the '542 patent and claims 1–3 of the '870 patent under § 271(a) will be dismissed.

The parties dispute whether method claims 19–20 and 36–39 of the '870 patent necessarily involve steps in multiple countries. Unlike the other method claims, which reference "first country" and "second country," claims 19–20 and 36–39 reference "originating country" and "receiving country." [21] The claims also mention transmitting "a paging message which came from another country." Resolution of the meaning of "originating country," "receiving country," and "another country" in the context of the patents-in-suit is a matter of claim construction. To support their proffered claim constructions, the parties cite to the patents-in-suit, the patent prosecution history, and the public records regarding United States Patent No. 6,960,983, the predecessor to the '870 patent. While it is indisputable that claim construction is a matter of law reserved

---

**20.** In light of the foregoing discussion granting the foreign defendants motions to dismiss for lack of personal jurisdiction, the Court will deny Plaintiff's Motion for Issuance of Letters Rogatory (Docket No. 430) to the extent that they may no longer be appropriate. However, this denial will be without prejudice with the right of Plaintiff to refile should they become necessary.

**21.** Method claim 19 states, in relevant part, in the originating country: designating a page receiving country, from a plurality of potential countries, in which a receiving

user is to be paged, by using country data, wherein designating is performed by the originating user when the originating user inputs the paging signal to the website; in a page receiving country: transmitting a device ID of a receiving user, and a paging message which came from another country, over at least a digital data network to a computer, and the computer causing a wireless transmitter located in the page receiving country to page a receiving user in the page receiving country[.]
(Paper 1, Ex. 1, at col.12 ll.25–37).

for the court, the usual procedure is for the parties to move for a *Markman* claim construction hearing and to submit briefs solely addressing the claim construction issues. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The parties have not moved for a hearing in this case, choosing instead to intermingle construction arguments with their other Rule 12(b)(6) assertions.

▬▬▬ As suggested by the law governing claim construction analysis, the necessary inquiries are of the kind not appropriate for the motion to dismiss stage. To determine the meaning of claims, the court initially considers three sources: the claim, the specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317–18 (Fed.Cir.2005). Extrinsic evidence, "including expert and inventor testimony, dictionaries, and learned treatises," may be received by the court in its discretion if it is helpful to understand the patent, or if needed to resolve an ambiguity in the intrinsic evidence. *Id.* Consideration of extrinsic evidence is inappropriate in a 12(b)(6) ruling, as the inquiry is limited to the complaint and the documents attached thereto or incorporated by reference. Although the parties have not presented extrinsic evidence in their briefs, the Court sees no need for the parties to hamstring their arguments solely to resolve the claim construction issues at such an early phase of the litigation. Furthermore, the piecemeal arguments raised in various briefs have not afforded the parties a proper opportunity to assert their arguments in a coherent and complete fashion. In light of the size of this case, a better approach is to have the claim construction issues fully briefed and presented to the court at a later date.[22] Accordingly, the motions to dismiss the claims of infringement for method claims 19–20 and 36–39 of the '870 patent will be denied.

### 2. Systems Claims

▬▬▬ Plaintiff contends that Defendants have infringed the systems claims under § 271(a) by "us[ing]" them "within the United States." Defendants, on the other hand, argue that because the patents-in-suit include components that involve activities that must take place outside of the United States, and therefore outside of the reach of United States patent laws, the patents-in-suit cannot be infringed.[23] De-

---

**22.** At least two other courts have recognized the imprudence of resolving claim construction issues in a motion to dismiss. *See Cima Labs, Inc. v. Actavis Group HF*, Civ. Nos. 07–893, 06–1970, 06–1999, 2007 WL 1672229, at *3 (D.N.J. June 7, 2007); *Schreiber v. Eli Lilly and Co.*, No. Civ. A. 05CV2616, 2006 WL 782441, at *4 n. 10 (E.D.Pa. Mar. 27, 2006).

**23.** The language of claim 4 of the '870 patent is representative of the multi-national language of the other systems claims. In relevant part, claim 4 provides,

> A system for paging a receiving user in a country-selective paging system, comprising:
> a paging system spanning a plurality of different countries of the world, the paging system including a plurality of servers, and wireless transmitters in different countries

for transmitting paging messages to receiving users;

. . .

a first website or server located in a first country for allowing an originating user to page the receiving user who may be located in a second country different from the first country, the originating user not necessarily knowing what country the receiving user is located in;

. . .

means for sending a paging communication via at least the packet-switched digital data network to a second website or server, the second website or server being in communication with a wireless transmitter located in the second country, and wherein the paging communication causes the second website or server to initiate paging the receiving user via the wireless transmitter in the second country[.]

('870 Patent, col.10 ll.1–30).

fendants argue that the requirements of a "first country" and a "second country" different from the first country, and two users, an "originating user" and a "receiving user," preclude the possibility that infringement of the patents could occur "within the United States." Plaintiff counters that the availability of relief under § 271 is not precluded merely because the patents-in-suit involve components that take place outside of the United States. The Court cannot resolve this issue at this time, as the question of the situs of use of a patent is a question of fact.

All parties rely heavily on *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed.Cir.2005). In that case, RIM's allegedly infringing Blackberry technology involved an interface switch, or relay, in Canada, through which all of RIM's customers' emails passed. The central issue in *NTP* was whether RIM could infringe NTP's patent where the Blackberry technology involved a foreign component. The court clarified the definition of "use": "the use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained." 418 F.3d at 1317. For systems claims, the court found, "use of NTP's asserted system claims occurred within the United States. RIM's customers located within the United States controlled the transmission of the originated information and also benefitted from such an exchange of information." *Id.* at 1317. Regarding RIM's argument that the location of the relay in Canada precluded such a finding, the court explained that RIM

> fails to appreciate the way in which the claimed NTP system is actually used by RIM's customers. When RIM's United States customers send and receive messages by manipulating the handheld devices in their possession in the United States, the location of the use of the

communication system as a whole occurs in the United States. This satisfactorily establishes that the situs of the "use" of RIM's system by RIM's United States customers for purposes of section 271(a) is the United States.

*Id.*

The *NTP* court and the parties here also rely on *Decca Limited v. United States*, 210 Ct.Cl. 546, 544 F.2d 1070 (1976), which similarly held that an extraterritorial component of an allegedly infringing device did not necessarily preclude a finding of infringement. The court found that even though components of the patent were outside of the United States, use occurred in the United States because the system "is controlled by the United States in the sense that it established and continuously monitors the signals from that station, and this all occurs in the United States." *Id.* at 1082. The court's conclusion regarding the situs of use did not turn on any individual factor, but was a "combination of the circumstances here present." *Id.* In sum, *NTP* and *Decca* stand for the proposition that whether an allegedly infringing system is capable of use as a whole "within the United States" is a question of fact that turns on the unique circumstances of a particular case.

Defendants attempt to distinguish *NTP* and *Decca* on numerous grounds, but principally by asserting that the patents in those cases were territorially-neutral whereas the patents-in-suit here expressly require activity in multiple countries. In *NTP* and *Decca*, there was no question that the patent itself was capable of being used "within the United States," but here, because the claim language is multinational, Defendants contend that the '870 and '542 patents are incapable of use in just one country. Defendants would have the Court avoid the fact-specific inquiry to determine the situs of "use" of the allegedly

infringing systems and simply conclude that the patents-in-suit are incapable of use "within the United States" as a matter of law. Such a holding would preclude the possibility that Defendants' systems and devices could infringe under § 271(a), no matter the particular circumstances of use.

To be sure, the question raised here is different from the questions in *NTP* and *Decca*. Rather than raising the question of whether an infringing system is capable of use within the United States, Defendants here are asking whether the patents-in-suit themselves are capable of use within the United States. Nevertheless, the answers to both questions turn on fact-specific inquiries of the allegedly infringing systems. *See, e.g., Litecubes, LLC v. Northern Light Prod., Inc.*, 523 F.3d 1353, 1365 (Fed.Cir.2008); *NTP*, 418 F.3d at 1317 ("it was proper for the jury to have found that use of NTP's asserted system claims occurred within the United States."). Defendants would have the court dispose of Plaintiff's case by conducting an analysis similar to that of claim construction to determine the situs of use of the patents-in-suit. However, such a determination is not akin to claim construction, where the court is determining the elements and limitations of a claim based on the claim's language. Rather, here, the Court would have to determine how the "use" element of § 271(a) applies

to the patents-in-suit. This determination cannot be made in a vacuum, as the answer could be different for each Defendant's system. Defendants' contention that the Court make this determination as a matter of law is belied by their own arguments, which are based on distinguishing the factual circumstances in *NTP* and *Decca* from the facts in the present case. At this phase in the litigation, it is sufficient to find that Plaintiff has stated a claim for relief regarding the systems claims of the '870 and '542 patents, and therefore, Defendants' motions to dismiss will be denied.[24, 25]

## B. Induced and Contributory Infringement, 35 U.S.C. § 271(b) and (c)

Defendants contend that Plaintiff's claims for induced and contributory infringement must be dismissed. Sections 271(b) and (c) provide,

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the inven-

---

**24.** The parties also raise a claim construction issue regarding system claims 22–25 of the '870 patent. The parties repeat their arguments regarding whether "originating country" and "receiving country" are necessarily two different countries, as discussed above concerning method claims 19–20 and 36–39 of the '870 patent. Plaintiff insists that the systems do not require components in multiple countries and therefore Defendants have infringed by the "makes," "offers to sell," and "sells" provisions of § 271(a) as well as the "uses" provision. As explained above, the court will address claim construction arguments at a later date.

**25.** Defendant Orange S.A. has filed the only motion for summary judgment, primarily concerning the issue of the term "use" as it applies to Plaintiff's patent. However, in light of the above discussion and because of the fact-specific nature of defining the term "use" in this case, the Court will deny Defendant Orange's motion for summary judgment, without prejudice to refile it at a later date after some discovery has been completed. Likewise, the Court will deny Plaintiff's motion for Discovery under Fed.R.Civ.P. 56(f), as it relates to Defendant Orange's motion for summary judgment.

tion, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

Plaintiff argues that the complaint puts Defendants on notice that they have infringed the patents-in-suit by inducing their customers or subscribers to use patented systems in the United States. Defendants present three arguments to defeat Plaintiff's inducement and contributory infringement claims: (1) Plaintiff cannot establish direct infringement and therefore it cannot establish contributory or induced infringement, (2) Defendants' allegedly infringing components have substantial non-infringing uses under § 271(c), and (3) Plaintiff has not alleged the necessary "intent" element of § 271(b) and (c).

 Regarding Defendants' first argument, it is widely understood that the patentee must show direct infringement to prevail on claims of contributory infringement or induced infringement. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277 (Fed.Cir.2004) ("[a]bsent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement.") (quoting *Met–Coil Sys. Corp. v. Korners Unlimited*, 803 F.2d 684, 687 (Fed.Cir.1986)). As explained above, Plaintiff's claims of direct infringement regarding claims 4–39 of the '870 patent and claim 6 of the '542 patent will not be dismissed. Therefore, Defendants' argument fails as to those claims. As to the method claims involving steps in countries outside the United States, claims 1–3 of the '870 patent and claims 1–5 of the '542 patent, Plaintiff cannot establish direct infringement as a matter of law and therefore cannot establish contributory or induced infringement.

## C. 35 U.S.C. § 271(f)

 Plaintiff alleges that Defendants are infringing the patents-in-suit under § 271(f) by supplying or causing to be supplied in or from the United States components, including messages, servers, transmitters, computers, products, hardware and/or software of the patents-in-suit in a manner so as to actively induce infringement in foreign countries. (Paper 1 ¶¶ 145, 159). Subpart (f) provides,

(1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

(2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

Regarding method claims, as determined above, method claims 1–3 of the '870 patent and 1–5 of the '542 patent cannot be infringed under United States patent law because of their requirements for steps to take place in more than one country. It follows that a foreign combi-

nation could not infringe under § 271(f). Accordingly, Defendants' motions to dismiss the § 271(f) allegations as to those claims will be granted.

Defendants contend that they cannot be liable for infringement under § 271(f) because there can be no infringing combination of the components of Plaintiff's patents "occurr[ing] within the United States." They argue that if all of the components of the claims are combined in one country, then that combination does not infringe because the patents require actions in two countries. In other words, if a combination of the components of claim 4 of the '870 patent "occurred within the United States," the combination would not be employing a "first country" and a "second country" different from the first country, and therefore would not infringe the claim.

■■■ Defendants' reading of subpart (f) is overly strict. Defendants insist the statute should be read to proscribe inducement of "the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred [entirely] within the United States." The insertion of "entirely" is improper, as it is contrary to the statutory language requiring merely that the combination be "in a manner that would infringe." There is no inherent requirement that "a manner that would infringe" must be a "combination entirely within the United States." To the contrary, as shown in *NTP* and *Decca*, extraterritorial components to a system do not preclude a finding of infringement. Just as it remains a question of fact whether the Defendants are infringing the patents-in-suit under § 271(a), it remains a question of fact whether the foreign activities are infringing under § 271(f). The analysis under § 271(f) requires the court to put the parties acting abroad in the shoes of a domestic actor to make a determination of infringement analogous to that made under § 271(a). As the legislative history of the subpart (f) states,

> [t]he bill simply amends the patent law so that when components are supplied for assembly abroad to circumvent a patent, the situation will be treated the same as when the invention is "made" or "sold" in the United States. (Patent infringement currently is defined as making, using, or selling an invention in the United States.).

(Paper 360, Ex. 5, S.Rep. No. 98–663, at 2–3). In sum, Plaintiff has stated a claim for relief under § 271(f), and questions of fact remain as to Defendants' liability.

The claim construction issue regarding the existence of multinational components in claims 19–25 and 36–39 of the '870 patent remains unresolved at this time, and therefore, the motions to dismiss the § 271(f) allegations as to those claims will be denied.

### D. 35 U.S.C. § 271(d), (e), (g)

Plaintiff seeks relief under "all subparts" of 35 U.S.C. § 271, but does not allege any facts to support relief under §§ (d), (e), and (g). These subsections are inapplicable to the patents-in-suit. Subpart (d) relates to protections for patentees regarding antitrust allegations and does not create a separate form of liability. Subpart (e) concerns inventions subject to the Federal Food, Drug, and Cosmetics Act. Subpart (g) concerns the importation of a product made by a patented process, and the court in *NTP* held that subpart (g) does not apply to the transmission of electronic messages. 418 F.3d at 1323. Plaintiff has not attempted to defend any claims under these subparts. Accordingly, these claims will be dismissed.

## E. Invalidity

Defendant T–Mobile argues that Plaintiff's complaint should be dismissed because the patents-in-suit are invalid under 35 U.S.C. § 101. (Paper 552). T–Mobile contends that because every claim of the patents-in-suit require activity to take place in two different countries, they cannot be infringed. Asserting that the right to exclude others from practicing the patented invention is the "essence of a patent grant," T–Mobile argues that "[a] patent claim that cannot be infringed does not confer any right to exclude because it cannot prohibit anyone from practicing the claimed invention. Therefore, the subject matter of such a claim cannot be protected by the patent statute." (*Id.* at 2).

T–Mobile's argument requires a claim construction to determine as a matter of law whether the claims expressly require activity in two different countries. As explained above, claim construction at this phase of the litigation would be premature.

Further, even if the Court eventually finds that every claim in the patents-in-suit require activities in more than one country, that does not necessarily mean that the systems cannot be "used" "within the United States." As explained above, the situs of use is a question of fact that is not subject to disposition in a motion to dismiss. Accordingly, the court will deny T–Mobile's motion to dismiss.[26]

## CONCLUSION

For the foregoing reasons, the foreign Defendants' motions for lack of personal jurisdiction will be granted, and the remaining motions to dismiss for failure to state a claim will be granted in part and denied in part. A separate Order will follow.[27]

---

26. Defendant Upside Wireless has filed a Motion to Dismiss (Docket No. 1057). However, it appears to the Court that Defendant Upside Wireless is without counsel, and as a corporation, it is not entitled to represent itself in this proceeding. To the extent that the motion has been improperly filed on behalf of the corporation, the motion will be denied.

27. Because of the number of Defendants in this case, Attorney Bruce Marcus, counsel for AT & T Mobility, LLC, has agreed to be the liaison between the Court and Defendants whenever the Court needs to communicate with all of the Defendants. The Court appreciates this gesture, if no one objects, Attorney Bruce Mann will be the attorney contacted to coordinate for all the Defendants.